REMSEN and another *v.* HAY and others.

---

Although courts view with jealousy a mortgagee's acquiring an absolute ownership, yet there is no law against it where the transaction is fair. The law only prohibits a mortgagee from availing himself of a stipulation contained in the mortgage or in a seperate instument made at the time or of some covenant or agreement forming part of the original transaction, and by which he attempts, upon the happening of some event or condition, to render the estate irredeemable.

---

The principal object of the bill in this cause was to reach a supposed interest of the defendants Charles Hay and Elizabeth his wife in certain leasehold premises standing in the names of the defendant William Scott and one William Legget (not a party); and to have it applied in payment of a judgment which the complainants had recovered against the defendant, Charles Hay, for a debt or demand contracted with them by his wife.

*Novemb.* 10,
1835.

*Mortgagor
and mortga-
gee.*

The cause was heard upon the bill and an answer of the defendant William Scott—as to the defendants, Hay and wife, it had been taken as confessed.

The bill set forth that in the month of November in the year one thousand eight hundred and thirty and at various other times since, the complainants, being then co-partners in their law business, were employed as attorneys and counsellors at law, by and on behalf of Elizabeth Hay, in various suits and matters in different courts in this state, whereby the complainants became entitled to certain costs and fees to be paid by the said Elizabeth Hay ; and for which costs and fees the complainants obtained a judgment as thereinafter stated. That, by an affidavit made in the year eighteen hundred and thirty-one, the said Elizabeth Hay, in a suit pending in the New-York Common Pleas Court, in which she was plaintiff, it appeared, and from that information it was charged to be true, that the said Elizabeth Hay was married in the year eighteen hundred and one in Scotland,

Great Britain, to one Charles Hay also a defendant, then private soldier in the British army; that Charles Hay became afterwards intemperate, and Elizabeth Hay came into the United States of America about the year eighteen hundred and twenty-two; and that, at the time of making that affidavit, she had not heard of or from the said Charles since she came into the said United States; and that she had always acted and done business here in her own individual name. That, while the said Elizabeth Hay was here without her husband and acting in her own name, she acquired very considerable property and effects in the course of her business and she also acquired certain leasehold premises in Laight Street in the city of New-York, on a lease from Trinity Church for a long term of unexpired years, subject to renewal; that the leasehold premises had been built upon and improved and let out and yielded a rent exceeding ground rent, taxes and other necessary expenses of two hundred and fifty dollars, which lease or assignment was to the said Elizabeth Hay in her individual name. That the said Elizabeth Hay, before her husband came to the United States of America, and as the complainants believed in the year eighteen hundred and thirty-one, transferred the said lease and all the premises therein described to William Scott and William Legget, co-partners doing business under the firm of Scott and Legget, in order, as pretended, to secure to them some debt, which assignment appeared to be an absolute aud unconditional transfer. The bill charged that the assignment of the said lease, though absolute in its terms, was not intended to divest said Elizabeth Hay of all right legal and equitable, but, if any debt was due by her to the said Scott and Legget, it was secretly understood the assignment was of no other or greater effect than a mortgage to secure such debt—and charged the transfer was made absolute in its terms, with the understanding and intention to cover the property or some interest therein for the benefit of the said Elizabeth Hay and to hinder her creditors from reaching or affecting the same. That, notwithstanding the apparent sale and absolute assignment between the said Elizabeth Hay and Scott and Legget of the said lease, the said Elizabeth Hay had ever since remained in the

.possession of the said premises and rented out from year to year such parts as she did not occupy ; and received the rents for her own use, not paying any rent herself, nor paying over the rent she received. That William Scott had transacted all or almost all the negotiations with the said Elizabeth Hay and was fully acquainted with all the particulars and William Legget.had gone to Scotland and had not returned. That sometime in the year eighteen hundred and thirty two, Charles Hay arrived, for the first time, in the United States at the port of New-York, and, though during, the absence of her husband out of the United States she had a right to acquire property and transact business in her own name, yet, on his arrival, all his marital rights over her person and property, were in full force and legal operation ; and that, about the twenty-first day of April in the year eighteen hundred and thirty-four, the complainants prosecuted their suit in the court of Common Pleas of New-York against the said Charles Hay (the husband of the said Elizabeth Hay) for the costs and fees before mentioned due and payable to the complainants for their services rendered as attorneys and counsellors in divers suits and matters for the said Elizabeth Hay during the absence of her husband ; and afterwards, on the twenty-eighth day of May in the year eighteen hundred and thirty-four, recovered a judgment against the said Charles Hay for three hundred and fifty-six dollars and thirty-three cents, damages and costs, which was, on that day, duly docketted. That an execution was issued thereon, returnable the third Monday of June in the year eighteen hundred and thirty-four, upon which execution the sheriff returned that the said Charles Hay had no lands or tenements, goods or chattels ; so that the said judgment remained of record unpaid ; that by the aforesaid execution the complainants have exhausted their legal remedies ; and charged that the said Charles Hay had some equitable interest, things in action or other property of the value of one hundred dollars, &c.

The bill prayed for a receiver, with the usual powers ; and for an injunction ; and that Scott and Legget might set forth and establish their debt (if any) under the direction of the court ; and, if any debt or demand were established and

allowed as prior to the complainant's judgment, that, after paying the same, the complainants said judgment might be paid, with interest, with their costs and charges, out of the surplus proceeds of sale of the said lease and premises ; and that Scott and Legget be charged with all rents they had received or permitted the said Elizabeth Hay to receive since the assignment—and for other and further relief.

The answer of the defendant, William Scott, (*inter alia*) admitted that the complainants were retained as attorneys and counsellors at law in a suit by and in behalf of Elizabeth Hay, but submitted, as a question of law, upon the circumstances of the case, whether they should be paid by the said Elizabeth Hay.   The defendant believed and admitted the defendant, Elizabeth Hay, while here, without her husband and acting in her own individual name, acquired property and effects in the course of her business, and particularly some claims against one Thomas Roberts ; that Elizabeth Hay and Thomas Roberts referred all their claims to arbitrators (of whom the defendant was one) who, in September, in the year eighteen hundred and thirty, made an award in favor of the said Elizabeth Hay, for eight hundred and ten dollars ; that the bond and award were left with the complainants to collect the amount and they prosecuted a suit thereon in her name against the said Roberts and failed in the suit, and he believed nothing was collected.   That sometime during or shortly before the month of March in the year eighteen hundred and thirty, the said Elizabeth represented to the defendant that she had an opportunity of purchasing a lease of a lot in Laight Street in which she then lived, and requested the defendant and his partner to advance her the sum of three hundred dollars—and, having entire confidence in the integrity of the said Elizabeth, this defendant and his partner Legget, as a firm, did advance to her the sum of three hundred dollars on the twenty-seventh day of March, eighteen hundred and thirty, wherewith the said Elizabeth purchased the said lease and premises.   That the annual ground rent of eighty dollars had been paid from time to time to the current year ; the rent ending November, eighteen hundred and thirty-four, and the previous half year, the defendant had paid.   That the

said Elizabeth erected a building about nine feet wide and two stories high which cost between two hundred and three hundred dollars. That, since the premises were assigned to the defendant and his partner, they had let for two hundred and twenty-four dollars per annum, independent of a small space or room which the defendant allowed the said Elizabeth to occupy rent free, and which, if let out, would produce an additional sum of thirty dollars; and that the clear rent of the said premises, after paying ground rent, taxes and allowing for repairs and expenses, would not exceed one hundred and twenty-four dollars. The defendant believed that the description of the said building was not such as to enable the assignee of the lease to claim a renewal or payment for the building. That previous to the assignment to the defendant and his partner, Elizabeth Hay had become indebted to the defendant and his partner, in addition to the three hundred dollars advanced to purchase said lease, for other advances in cash to the amount of one hundred dollars. That, either shortly before or early in April, eighteen hundred and thirty-four, she called at the store of the defendant and stated she had lost her claim against Roberts or could not collect it and she had no other means of paying their dues, except by the leasehold premises; that, as she purchased the premises with their money, she considered it her duty to assign the lease to them; that this defendant consulted with his partner as to the value of the premises, and they finally agreed to take the same in satisfaction of the debt, and directed an attorney to prepare an assignment and, not knowing the exact amount of debt, directed the sum of five hundred dollars to be put in as the consideration, supposing the amount was of no importance and that sum not far from the balance due. That previous to this negotiation, Charles Hay, the husband of the said Elizabeth, arrived in the United States; and the said Charles Hay and Elizabeth Hay sold the said lease and premises to the defendant and his partner for the amount of their debt. That the defendant, on behalf of himself and partner, assumed control and ownership over the said lease and premises; and had collected and received the rents from the under tenants and paid ground-rents and other expenses thereon.

That the said Elizabeth Hay left the said lease, with the assignment to her, in the possession of this defendant, shortly after the said assignment to her was executed; and this defendant considered it was intended by her as an equitable security for the three hundred dollars advanced by him and his partner to purchase the said lease.

He denied the said assignment was intended as a security for a debt, but a transfer in satisfaction of the amount due to Scott and Legget, although the defendant admitted he always had it in view to retransfer the said lease to the said Elizabeth, in case she was able to repay the amount of the said advances. That the assignment, which was absolute, was intended by the said Elizabeth Hay and her husband, and by this defendant and his partner, as a sale of all right and interest, legal and equitable, in the said lease and premises, the said Elizabeth stating, at the time of the arrangement, that she found herself involved in difficulty and unable to pay the debt due to the defendant and his partner, and an absolute assignment was made, which was received as a discharge of all indebtedness from the said Elizabeth Hay to Scott and Legget; and denied the assignment was given or received or intended to be given or received as a mortgage to secure any debt whatever or to cover the property or any interest therein for the said Elizabeth Hay or to hinder or delay the creditors of the said Elizabeth from knowing or reaching her interest therein. The defendant believed and admitted it was the intention and object of Elizabeth Hay to pay the defendant and his partner by a transfer of said lease; and, as a consequence, her other creditors would be prevented from reaching or affecting said premises. The defendant insisted the said Elizabeth and her husband had the legal and equitable right thus to pay Scott and Legget. That since the execution of the said assignment to Scott and Legget, he and his partner had rented out and received the rents and profits of the premises (except a small room which they allowed the said Elizabeth to occupy without rent as before stated and except further that the said defendant ratified the agreement made by Elizabeth Hay with the tenants before making the said assignment.) That defendant and his partner had received, through Elizabeth

Hay, some small part of the rents, which was paid through her by the occupants—but the defendant had generally collected them himself. That ever since the execution of the said assignment, Scott and Legget had continued to hold and did still hold the legal title under the said lease. The defendant submitted, as a question of law as to what would be the effect of the said Elizabeth's residence in the United States, and doing business as a feme sole from eighteen hundred and twenty-two to eighteen hundred and thirty-two, while the said Charles Hay was all that time without the jurisdiction, as to her having a right to acquire property and contract debts as a *feme sole ;* also, whether on the arrival of the said Charles Hay within the state of New York, the marital rights of the said Charles over-the property in possession or held by his said wife were in full operation? That the value of the premises at the time of the assignment would be variously estimated, by different persons, from six hundred dollars to eight hundred dollars; and he would be willing to sell for seven hundred dollars; that no renewal had been given or promised. That the said Elizabeth had not, since the said assignment, paid Scott and Legget any thing, except the rents as before stated.

Messrs. *Remsen* and *Clarkson,* in pro. per.

Mr. *D. Selden,* for the defendant William Scott.

The Vice-Chancellor :—The bill proceeds mainly upon the ground of Scott and Legget's holding a lease, by way of mortgage or security, for a debt due to them ; and that there is an equity of redemption or some interest remaining in Hay and wife or in one of them, which renders the property liable to be sold and the proceeds, after satisfying Scott and Legget's debt, subject, in equity, to the complainants judgment.

The question then is : whether Scott and Legget stand as mortgagees or as the absolute and *bona fide* owners of the leasehold premises.

The answer is positive in denying that the relation of mortgagor and mortgagee existed after the assignment or

*1835.*

REMSEN
*v.*
HAY.

*April* 4,
1836.

that the defendants, Hay and wife, continued to have any legal or equitable right or interest in the property. It is, nevertheless, contended that the parties could not, by such a purchase, extinguish the redeemable quality of the estate which was before in Hay and wife—that, "once a mortgage, always a mortgage," is an axiom applying to the present case. I think, however, it does not hold good here. Even regarding Scott and Legget .as mortgagees, by the mere deposit of the lease, it was certainly competent for them to become the purchasers of the equity of redemption. There is nothing in the policy of the law to prevent a mortgagee from acquiring an absolute ownership, by purchase, from a mortgagor, at any time subsequent to the taking of the mortgage and by a fresh contract to be made between them. Courts view with jealousy and suspicion any dealing between mortgagor and mortgagee to extinguish the equity of redemption ; but if it be fair and honest, on the part of the mortgagee, the purchase will not be disturbed. The law only prohibits a mortgagee from availing himself of a stipulation contained in the mortgage deed or in a separate instrument made at the same time, or of some covenant or agreement, forming a part of the same transaction with the loan and the taking of the security, by which he shall attempt, upon the happening of some event or contingency, to render the estate irredeemable and obtain an absolute ownership. In such cases, the maxim applies of " once a mortgage always a mortgage :" *Henry* v. *Davis,* 7 J. C. R. 40 ; *Clark* v. *Henry,* 2 Cowen's R. 332. But it cannot interfere with the right to foreclose, when the mortgage has become forfeited, nor with any fresh contract which the mortgagor may choose to make with his mortgagee for a sale or relinquishment of the equity of redemption and the vesting the latter with an irredeemable estate : 1 Powell on Mort. 117, 122, and notes. Such a contract will be as valid and binding as any other when it is fair in all its parts and free from fraud.

In the present case, as between the parties to the sale and assignment of the lease, there is no ground for imputing unfairness to Scott and Legget or for holding that any equity of redemption remains. The circumstance of their being

willing to re-convey to Mrs. Hay, provided their original amount were paid and she could hold the property securely for her separate use, must be deemed gratuitous and as conferring no legal or equitable right to demand it. Neither Hay nor his wife seek to get back the property; nor do they assert any right thereto upon any ground of fraud, inadequacy of consideration in the assignment or that it was intended as a security merely and not a payment and satisfaction of the debt.

If there be no right of redemption in Hay and his wife —and, according to the answer, there is none—then the complainants, as creditors, can have no such right.

.Whether the assignment was fraudulent as to creditors, is another question.

The complainants have not attempted, by this bill, directly to impeach it for fraud. It is not expressly charged, nor does the pleading pray that the agreement should be set aside on account of fraud. The equity of the bill is made to rest more particularly on the ground which has been considered; and I feel great difficulty, from the state of the pleadings, in entering into the consideration of fraud with respect to third persons. There are circumstances disclosed by the answer which may serve as *indicia* of fraud: such as selling the property in payment of an antecedent debt of four hundred dollars and without any advance, while the premises were at the time worth seven hundred dollars—the purchasers knowing of embarrassment from other debts and particularly the complainant's demand, which was then progressing towards a judgment—also, leaving Mrs. Hay, after the sale, in the enjoyment of a part of the premises free from rent. If these circumstances were distinctly charged as evidences of fraud, perhaps they might be explained away; and in the absence of direct allegation, I am not warranted in assuming them to be conclusive *per se* of fraud: see, *Cunningham* v. *Freeborn*, 11 Wend. 240.

Besides, there is a further difficulty. William Legget, who is interested as one of the owners of the lease, has not been made a party. He was absent for a time; and is alleged to have been abroad when the bill was filed. Still,

the answer of his partner shows his return to the city of New-York and his residence there ever since. He should, then, have been made a party: the bill, if it would upset their title, being defective without him. If it were, in other respects, sufficient to raise the question of fraud, this objection might still be obviated by the cause standing over for amendment; but, as it is, I consider, upon the whole case as now presented, the bill must be dismissed as to the defendant Scott, with costs: yet, without prejudice to a new bill to be filed for the purpose of setting aside the assignment of the lease to Scott and Legget for fraud, provided the complainants shall think proper to pursue it. With respect to the defendants, Hay and wife, as to whom this bill stands confessed, it may be retained for such a decree as the complainants can properly claim.