## VEACH *v.* SCHAUP *et al.*

In a proceeding to foreclose a mortgage, all persons having an interest in the equity of redemption, should be made parties to the bill, and if any incumbrancers, whether prior or subsequent, are not made parties, the decree of foreclosure does not bind them.

On the 16th of March, 1852, C. G., who afterwards intermarried with K., conveyed to S. ten acres, including a mill site, out of a certain quarter section of land. At the time of the conveyance to S., M. held a mortgage on the whole quarter section, executed by C. G., to secure the payment of $218.85, dated May 28, 1851, which was filed for record, July 5, 1851. M. at the time of the purchase by S., agreed to release the ten acres held by S. from all lien of the mortgage, and on the 22d of May, 1854, did execute to S. a release, which was dated back so as to conform to the date of the agreement to release. At the April term, 1853, of the District Court of Jackson county, M. obtained a decree of foreclosure under the mortgage executed by C. G. against her and her husband, upon the whole quarter section. S. took possession under the deed from C. G., and made valuable improvements on the ten acres. He was not made a party to, and did not know of the proceedings to foreclose. The judgment of foreclosure was assigned by M. to B., who issued execution thereon, under which the sheriff sold the whole quarter section to B. The sale was made June 30, 1853, and a deed for the premises made by the sheriff to B. July 1, 1854. B. was present, knew of the purchase, and drew up the deed from C. G. to S. On the 26th of September, 1853, S. mortgaged the ten acre tract to V. to secure the pay-

·ment of $1,200.  B. drew up and acknowledged the mortgage from S. to V. as justice of the peace—said nothing at the time of any claim he had on the premises—and did not forbid the conveyance.  B., about the time S. obtained the release from M., gave S. a writing of the nature of a quit-claim deed, to the ten acre tract, but it was not acknowledged or recorded, and is lost.  B. kept the fact that he had bought the land secret, and had stated that he did not wish V. to know it until the time of redemption had passed, and that he would not have intrusted the secret to his father or mother. On a bill filed by V. to foreclose the mortgage executed by S., to which S. and B. were made parties;

*Held*, 1. That S. not having been made a party to the proceedings to foreclose the mortgage executed by C. G. to M., was not bound by the decree, and had the right to redeem the ten acre tract in the hands of B. from the lien of the mortgage to M.

2. That V., as to all the rights of S. in the premises, was his representative, and might redeem in the same manner.

3. That whatever equity S. would be permitted to set up against B., was equally good in the hands of V.

4. That V. was entitled to a decree of foreclosure against all the interest of S. in the mortgaged premises.

5. That the purchase by B. under the M. mortgage, did not extinguish all the right of S. in the premises.

### *Appeal from the Jackson District Court.*

THIS is a petition for the foreclosure of a mortgage upon ten acres of ground, including a mill site, given by Schaup to Veach, on the 26th September, 1853, to secure the payment of $1,200.  The premises were conveyed to Schaup on the 16th March, 1852, by Catharine Gilmer, who afterwards intermarried with Patrick Killaan.  At the time of the conveyance to Schaup, Geo. Milner held a mortgage on the quarter section, of which the ten acre tract was a part, from Catharine Gilmer, to secure the payment of $218.85; this mortgage was dated May 28th, 1851, and was filed for record July 5th, 1851.  Milner, at the time of the purchase by Schaup, agreed to release the ten acres held by Schaup from all lien of the mortgage, and on the 22d May, 1854, did execute to Schaup a release, which was dated back so as to conform to the date of the agreement to release, May 16th, 1852.  At the April term, 1853, of the District Court of Jackson county, Milner obtained a decree of foreclosure

against the said Catharine and her husband, upon the mortgage on said quarter section. Schaup, who held a conveyance of the ten acres, was not made a party, and did not know of the proceedings in foreclosure. The judgment was afterwards assigned by Milner to Birge, one of defendants, who issued execution thereon, under which the sheriff sold and conveyed the whole quarter section, and Birge became the purchaser. The sale was June 30th, 1853, and the deed was not made until July 1st, 1854.

This petition for foreclosure was filed by Veach, March 12th, 1855, making Schaup and Birge parties. It charges that Birge sets up a claim to the ten acres, having bought the same at the sheriff's sale on the decree of foreclosure of Milner against Killaan and wife; that the ten acres were bought by Schaup of Catharine Gilmer, and paid for, knowing that Milner held a mortgage on the quarter section, of which it is part; that Milner, at the time of the purchase, agreed to release the mortgage lien as to the ten acres, and did so release it, May 22d, 1854; that Schaup had possession of the ten acres ever since his purchase, and had made extensive improvements thereon, and among others, had erected an extensive flouring-mill, the whole property and improvements being worth several thousand dollars. It further charges that Birge was present, and knew of the purchase, and drew up the deed from Catharine Gilmer to Schaup; and that he was present and drew up the mortgage from Schaup to complainant, and took the acknowledgment of the same as justice of the peace; that Birge said nothing at the time of any claim he had to the land, and did not forbid the conveyance from Schaup to Veach. The petition prays judgment for the amount due complainant on the mortgage against Schaup, and for the further sum of $250, paid by him, to purchase in an outstanding title to the premises, in the hands of D. F. Spurr; that the title of Birge to the ten acres may be declared null and void, as to complainant; and that a mistake in the deed to Schaup from Catharine Gilmer may be corrected, which it is admitted was known to Birge and Schaup at the time it was made.

The answer of Schaup admits the material allegations of the bill set forth above.   It states that Birge, at the time of making the mortgage to Veach, did not make any represen-tation as to title of Schaup in the ten acres; and denies all fraud and combination with Birge against complainant. The answer of Birge admits the title of Catharine Gilmer in the land, at the time of the sale to Schaup; but sets up the prior mortgage to Milner, which was foreclosed by judg-ment, April, 1853; that defendant purchased the judgment of Milner, and issued execution under which the sheriff sold the quarter section, of which the ten acres is part, June 30th, 1853, and made a deed to defendant July 1st, 1854; admits the sale by Catharine Gilmer to Schaup, and that Schaup took possession, which he has held ever since; admits the making of the release by Milner to Schaup, for the ten acres, made May 22d, 1854, as charged in the petition; but denies that Milner could at the time release the ten acres from the sale under the judgment; admits the mortgage from Schaup to complainant, and that he drew up and took the acknowl-edgement of the same; and that he made no mention at the time, of his having any claim to the land mortgaged.   The answer further asserts the superior title of defendant to the land, and denies all fraud or combination with Schaup, to defraud complainant.

The defendant Schaup was examined as a witness, and swears in his deposition, that on the day the conveyance was made to him by Catharine Gilmer, George Milner prom-ised him to give him a release of his mortgage as to the ten acres, which he afterwards gave him on the day it purports to have been acknowledged; that when the mortgage was made to Veach, Birge made no claim to the ten acres, and in preparing the deed took the description from the deed from Catharine Gilmer to Schaup; that Birge said nothing to Schaup of having any claim upon the ten acres, until July, 1853, when he was going to borrow money to pay the mortgage to Veach; Birge then showed him the sheriff's deed, which he had obtained, and told him he could not borrow money on the mill property; that the land belonged

to him; that he and Birge went to Galena, and together borrowed $2,500; and executed a mortgage, July 10th, 1854, to Kavman, on the mill property, to secure the payment of the same. Schaup further testifies, that Birge at one time, gave him some kind of writing, in the shape of a quit-claim deed to the ten acres and mill property. This was about the time he obtained the release from Milner. He went to Birge two or three times to get it, who partly refused to give it; said it was not necessary, and would do no good. He finally signed it, but it was not acknowledged or recorded, and is now lost. It appeared further in evidence, that Birge had kept the fact secret, of his having bought the land, and that he said he did not wish Veach to know it until the time of redemption had passed; and that he told one witness, he would not have intrusted the secret to his father or mother.

The court below dismissed the bill as to Birge, and rendered a decree for petitioner for $1,741.64, without any judgment of foreclosure against the land. Complainant appeals.

*Smith, McKinlay & Poor*, for the appellant.

*W. E. Leffingwell*, for the appellee.

STOCKTON, J.—The first question raised in the argument by complainant, is, as to the validity of the proceeding in foreclosure by Milner against Catharine Gilmer. It is claimed that Schaup, as the subsequent grantee of the ten acres, and assignee of the equity of redemption, should have been made a party to the suit, and that not having been made a party, he is not bound by the decree. Whether or not it was necessary to make a subsequent incumbrancer a party to the proceedings in foreclosure, has not been determined by the Code, nor so far as we are informed, has the question been adjudicated by this court. Under the act of 1843, section 4, in force when this mortgage was given, the mortgagee in proceedings to foreclose, must make the mortgagor, and all persons actually occupying the mortgage estate, parties. It is claimed

by the complainant, that by virtue of this provision, and the doctrine that the law in force at the time of the execution of the mortgage, enters into and becomes a part of the contract, Schaup should have been made a party to the foreclosure suit. While we cannot recognize the principle to the full extent claimed by the complainant, we have no hesitation in holding, according to the well settled rules of chancery proceedings, that all persons having an interest in the equity of redemption, should be made parties to a bill of foreclosure; and if any incumbrancers, whether prior or subsequent, are not made parties, the decree of foreclosure does not bind them. Story's Eq. Pleadings, § 193; Adams' Eq. 315, note.

In New York, it has been held that, where the vendee of the mortgagor was not made a party, and there had been a foreclosure and sale, the proceedings were void as to such vendee, and he might maintain ejectment against a purchaser under the chancery proceedings. The decision was based on the ground, that the mortgagor having parted with his interest before the bill filed, and his vendee not having been made a party, the purchaser at the sale under the foreclosure, acquired no interest in the premises, except as against the mortgagor. *Watson* v. *Spence*, 20 Wend. 260.

In Ohio, it has been held, that the proceedings are not void, but that the vendee of the mortgagor, not made a party to the proceedings in foreclosure, may have a bill to redeem. *Frische* v. *Kramer*, 16 Ohio, 125. To the same effect is the doctrine in Illinois, in the case of *Bradley* v. *Snyder*, 16 Ill. 263; see also *Haines* v. *Beach*, 8 John. Ch. 459; *Ensworth* v. *Lambert*, 4 Ib. 605; 2 Hilliard on Mort. 79, 88.

Applying the doctrine established by the above authorities, to the present case, we find that at the time the proceedings in foreclosure commenced, Catharine Gilmer had conveyed all her interest in the mill premises to Schaup; and the latter, not having been made a party to the suit, is not bound by it, and has, to say the least, the right to redeem the ten acres in the hands of Birge, from the lien of the mortgage to Milner. Veach, as to all the rights of Schaup

in the premises, is his representative, and may redeem in the same manner that Schaup might. Whatever equity Schaup would be permitted to set up against Birge, is equally good in the hands of Veach. Schaup, however, is not seeking any relief against the title obtained by Birge, and to all appearance seems to be resisting the claims set up by Veach, to have the mill property subject to the payment of his mortgage. What then are the rights of complainant under such circumstances? There is no question made by defendants, as to the right of Veach to have his money from Schaup; and we are of opinion, that he is entitled to a decree of foreclosure against all the interest of Schaup in the mortgaged premises, but what·that interest is, may involve another inquiry. But we are of opinion, that the District Court erred in dismissing his petition, with only a personal judgment against Schaup, thereby declaring that he had no interest in the land upon which the mortgage conveyed any lien, and that the same was taken away by the paramount lien of Birge, under the first mortgage and the sheriff's sale under it. Now, we are not of opinion, that the purchase by Birge, under the Milner mortgage, extinguished all the right of Schaup in the premises. Had he been made a party to the suit of foreclosure, and had he made no objection to the decree, or taken no steps to redeem the mill property from the lien of the mortgage, his interest might have been extinguished by the decree and sheriff's sale to Birge. But Schaup had purchased the ten acres of Catharine Gilmer in good faith, and for a valuable consideration; and although he had notice of the pre-existing mortgage to Milner, yet he took possession, and made his improvements under the supposition—indeed with the express agreement of Milner—that the lien of the mortgage as to the ten acres, was released. These facts would be sufficient to give Schaup, at least, a claim for his improvements. He had purchased the ten acres of Catharine Gilmer, for one hundred and fifty dollars, and made extensive and valuable improvements, until the property has become worth five or six thousand dollars. Certainly these improvements do not pass to Birge, under

Veach v. Schaup et al.

his sheriff's deed. All that Birge is entitled to claim under it, is the value of the land, in its unimproved condition, and as it was when conveyed to Schaup. That was all that Milner acquired any right to, under the mortgage from Catharine Gilmer, to secure the payment of the two hundred and eighteen dollars, and that was all upon which the mortgage can be claimed to operate as a lien. Milner had, when Schaup purchased of Catharine Gilmer, agreed to release his mortgage lien as to the ten acres. He then knew of the purchase by Schaup, of his possession and improvements. Birge, who is his assignee, knew at the time he purchased the mortgage and decree of foreclosure from Milner, that Schaup had already purchased and paid Catharine Gilmer for the ten acres. Schaup's possession was notice to all the world of the interest he had in the land, whatever it was. In addition to this, Birge, after he had purchased the whole tract at the sheriff's sale, and while he had the sheriff's certificate of purchase in his pocket, when Veach and Schaup came to him to get him to draw up the mortgage for $1,200, and to take the acknowledgment of it, as justice of the peace, is silent as to any claim he has to the property intended to be mortgaged, and suffers Veach to lend his money on a title and security which he knew to be unsafe. Now, if it was not the duty of Birge, when called on to write the deed, to make known to the parties the exact state of the title to the ten acres, and the interest which he held in it himself, it would, at least, be exceedingly inequitable to allow him to derive a positive benefit from his silence, and to take the land with all the improvements on it, which had been paid for and put there with Veach's money, obtained by Schaup on the mortgage drawn up by himself. It will be proper, therefore, for the District Court to render a decree in favor of complainant, allowing him to redeem the ten acres, comprising the mill property, conveyed to Schaup by Catharine Gilmer, from the operation and effect of the sale made by the sheriff to Birge, under the decree of foreclosure, on his paying into court, for the use of Birge, a sum of money which shall have the same proportion to the whole amount

due on the decree assigned to Birge, as the ten acres, without the improvements placed thereon by Schaup, since his purchase, bears to the one hundred and thirty-one acres, included in the mortgage. This is making the ten acres sold to Schaup, bear its fair proportion of the whole amount of the mortgage debt. On the payment of the money into court by Veach, the court will by its order and decree, direct that the title of Birge in the said ten acres be released and extinguished, and render a judgment of foreclosure in favor of Veach against Schaup, as to the mortgaged premises, and for such amount as may be found due on the mortgage, including such sum as he may be required to pay into court for Birge; and the court will further direct a sale of the mortgaged premises to satisfy the amount decreed in favor of Veach, with costs.

No opposition has been made to the relief sought in the petition, as to the mistake in the deed from Catharine Gilmer to Schaup, and as the same is confessed, the court will decree the correction of the same. It is also claimed, that complainant is entitled to recover against Schaup, the amount alleged to have been paid by complainant to D. F. Spurr, for the conveyance by Spurr of his title to the mill property, derived from Catharine Gilmer and her husband. We do not see the justice on which this claim is founded. The deed from Catharine and Patrick Killaan was dated September 6th, 1854. At this date, to say nothing of the previous deed the parties had made to Birge of the same premises, all the title and interest of Catharine and Patrick Killaan, therein, had passed to Birge, under the sheriff's deed of July 1st, 1854, which had been duly recorded. And although we have felt it our duty to hold, that Schaup was not bound by the proceeding in the suit wherein the decree of foreclosure was rendered, because he was not made a party; yet the proceedings were valid as to Catharine Killaan, and the sheriff's deed passed all her interest in the mill property to Birge. This deed was recorded long before the deed to Spurr was obtained. Of all this, Spurr was bound to take

notice; and consequently he took no title by the conveyance to him from Catharine and Patrick Killaan.

The decree of the District Court is reversed, and the cause remanded for further proceedings in accordance with this opinion.