JOHN McNANEY, in Behalf of Himself and of All Other Judgment Creditors of FRANCIS G. HALL Similarly Situated Who Shall Hereafter Join in This Action, Appellant, v. FRANCIS G. HALL and Others, Respondents.

*General assignment for creditors — right to assail prior conveyances vests solely in the assignee — accuracy of the inventory — intent of the assignor — determination of a trial court, when reversed — judgment setting aside an assignment, not an estoppel.*

If the purpose of a debtor in making a transfer of property to a creditor is an honest one, and if he intends thereby to secure the debt owing by him to the creditor and that is his only purpose, he has a right to make the transfer and secure such creditor, and the transaction is valid notwithstanding the fact that at the time the debtor is indebted to various creditors in a sum exceeding the value of his property.

Where a debtor makes a valid assignment for the benefit of creditors the right to assail conveyances made by the debtor prior to the assignment on the ground of fraud vests in his assignee alone, and such action cannot be maintained, under such circumstances, by a creditor of the assignor.

The act of an assignee for the benefit of creditors in making schedules in no way reflects upon the act of the assignor in making the assignment. No schedules are absolutely perfect and no debtor can inventory every item of his property with strict accuracy. Room must be allowed for honest mistake in such respect and possibly even for careless and thoughtless error.

The validity of an assignment for the benefit of creditors depends upon the intent of the assignor at the time the assignment is made. The subsequent acts of the assignor, however, are admissible in evidence, upon the trial of an action brought to set aside his assignment, to reflect light upon his original intent.

Where a review of the facts by an appellate tribunal is proper it is under no obligation to arbitrarily adopt the conclusions of the trial court, yet great consideration will be accorded to its opinion, especially where there is evidence upon both sides and the mind of the court is called upon to weigh conflicting statements and inferences, and to decide upon the credibility of opposing witnesses.

In reviewing the determination of a trial court in such a case, the appellate court is not warranted in reversing it upon the sole ground that in its opinion the trial court should have reached a different conclusion. To justify such a course it should appear that the findings of the trial court were against the weight of the evidence or that the proof so clearly preponderated in favor of the contrary result that it can be said with reasonable certainty that the trial court erred in its conclusion.

The judgment obtained in an action brought by a creditor adjudging the assignment of his debtor, for the alleged benefit of creditors, to be fraudulent and void, and setting it aside as against the plaintiff in that action, is not an estoppel in an action instituted by another creditor of such debtor to set aside such assignment, where the plaintiff in the second action was not a party to the prior action nor a privy to the plaintiff therein ; nor is such judgment conclusive evidence in the second action against the assignor or against the assignee.

Facts which are neither controlling nor conclusive evidence of fraud, considered.

APPEAL by the plaintiff, John McNaney, in behalf of himself and of all other judgment creditors of Francis G. Hall similarly situated who shall hereafter join in this action, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Chemung on the 4th day of April, 1893, upon the report of a referee dismissing the plaintiff's complaint upon the merits.

*Baldwin & Baldwin* and *Alex. Cumming,* for the appellant.

*Charles J. Bissell*, for the respondent Francis G. Hall.

*Reynolds, Stanchfield & Collin*, for the respondents William S. Carr et al., executors, etc., and Samuel C. Taber, as assignee, etc.

MARTIN, J.:

The purpose of this action was twofold: 1. To set aside a general assignment for the benefit of creditors made by the defendant Francis G. Hall to the defendant Taber; and, 2. To set aside certain deeds, assignments, bills of sale and other transfers and conveyances made by the defendant Francis G. Hall to the defendant Samuel S. Hamlin. The ground upon which the plaintiff sought to set aside the general assignment and the other conveyances mentioned, was that they were made with an intent to hinder, delay and defraud the creditors of the defendant Hall.

On August 21, 1884, the plaintiff's assignor recovered a judgment against the defendant Hall for $1,050.21. An execution was issued thereon which was returned wholly unsatisfied. Subsequently, and in March, 1889, the judgment, which was the basis of this action, was duly assigned to the plaintiff.

For several years prior to July 21, 1884, the defendant Hall was engaged in business as a private banker at the city of Elmira. On that day he suspended payment at his bank and closed the doors, claiming that he was unable to continue business and meet his obligations. At that time he was the owner of a large amount of valuable real and personal property, and was indebted to a large number of persons in an amount which exceeded the value of such property.

After his suspension the depositors and other creditors of the defendant Hall called upon him for a settlement of their claims. He made a list of his property, and placed an estimate of value opposite each piece, which he showed his creditors as a true list and a correct statement of their value. The list did not specify all his property, and the values were exaggerated. In his negotiations with the creditors he offered them the property mentioned in the list at the prices designated, in payment of their claims, and to some of them stated that he had no other property, and could pay in no other way; and that if they would not take the property at the prices, they would get nothing, and would get nothing if they sued.

Between the twenty-first of July and the first of August he compromised with some of his creditors by transferring to them a portion of his property at excessive prices, and thus paid and extinguished about $85,000 of his indebtedness. These transfers were made and received in good faith, without any intent to hinder, delay or defraud his creditors. Among the creditors of the defendant Hall were Samuel S. Hamlin and Betsey P. Hall. The latter transferred to the former all her claims against the defendant Hall on July 24, 1884. Between the twenty-first of July and the first of August the defendant Hall transferred to the defendant Hamlin the real estate and property mentioned in the complaint. These transfers were in form absolute, but were made and accepted upon the agreement between the defendants Hall and Hamlin that the latter should accept them as collateral security for the indebtedness of Hall to him, and that he should be responsible only for what he received out of the property so transferred. The defendant Hall was indebted to Hamlin at that time in a sum exceeding $60,000.

After these transfers were made, and on the 1st of August, 1884, the defendant Hall made a general assignment to the defendant Taber of all his property, not exempt by law, for the benefit of his creditors. The assignment contained no preferences except as to the wages and salaries of his employees.

The defendant Taber accepted the trust under such assignment, qualified as such assignee, took possession of the estate and entered upon the discharge of his duties, and continued to act as such assignee until the commencement of this action. The defendant Hall having omitted to make and file any inventory or schedule of the assigned estate, one was made and filed by the assignee. By inadvertence or mistake on the part of the assignee, and without fraud or fraudulent intent, the inventory or schedules were defective in omitting therefrom the property transferred by the defendant Hall to Hamlin and others as collateral security.

The foregoing, briefly stated, are the facts found by the referee. He also found that the general assignment for the benefit of creditors and the transfers and conveyances made to the defendant Hamlin were made and accepted in good faith, and without any intent to hinder, delay or defraud the creditors of the defendant Hall, and held that the defendants were entitled to a judgment dis-

missing the plaintiff's complaint with costs, and directed judgment accordingly.

The important issues in this case were whether the general assignment made by Hall, and the transfers and conveyances made to Hamlin as collateral security for the debts held by him against Hall, were made with an intent to hinder, delay or defraud his creditors.

We deem it unnecessary to state in detail all the various acts, circumstances and transactions which are relied upon by the appellant as evidence that the assignment and transfers in question were made with a fraudulent intent. The evidence disclosed a variety of circumstances and many transactions from which, if unexplained, an inference of fraud might perhaps have been drawn. The defendants have, however, introduced evidence which has explained the circumstances and transactions thus relied upon, in a manner which, if believed, would show that the purpose of the transfers in question was an honest one, and that they were made in good faith.

While the evidence shows that Hall transferred to Hamlin a large amount of real and personal property, yet it also discloses that he was largely indebted to Hamlin. These transfers were as security only, so that if the property transferred exceeded in value the amount of Hamlin's debt, the creditors of Hall would have the benefit of any surplus there might be. It was at least natural that Hall should have secured his indebtedness to Hamlin, who was a relative, and had been his friend from his youth up, and advanced to him these large sums of money. If his purpose in making these transfers was an honest one, and it was intended thereby to secure the debts owing Hamlin, and that was its only purpose, he had a right to thus secure him, and the transaction was valid. (*Citizens' Bank* v. *Williams*, 128 N. Y. 77; *Williams* v. *Whedon*, 109 id. 333 337; *Remington Paper Co.* v. *O'Dougherty*, 36 Hun, 79; affd., 99 N. Y. 673; *Knapp* v. *McGowan*, 96 id. 75, 86; *Dorr* v. *Beck*, 76 Hun, 540; *Sumner* v. *Skinner*, 80 id. 201; *Murphy* v. *Briggs*, 89 N. Y. 446, 452.)

The fact that Hall agreed to take charge of the property and to manage it for Hamlin was perhaps a circumstance to be considered by the referee in determining the question of fraudulent intent. But when it is remembered that Hamlin was an old man, who was infirm, unable to assume the care and labor incident to looking after

this large property, and that Hall had previously acted for him in the transaction of his business, it seems but natural that it should have been agreed between them that Hall should look after it for him. With this explanation, the potency of that circumstance as an evidence of fraudulent intent is very much diminished, if not substantially overcome.

Again, it is contended that the amount of the property transferred was large. This is true, but the debts it was given to secure were also large. The property transferred was not so greatly in excess of the debts to be secured as to constitute a circumstance of much weight bearing upon the question of fraud. Indeed, the referee has found that the value of the property transferred was in fact less than the amount of the debts owing by Hall to Hamlin.

Moreover, if the general assignment was valid, this action, under the allegations of the complaint, could not be maintained by the plaintiff to set aside the transfers and conveyances made to Hamlin. Under such circumstances, the action could only be maintained by the assignee, as the right to assail those conveyances on the ground of fraud was vested in him alone. (*Spring* v. *Short*, 90 N. Y. 538; *Crouse* v. *Frothingham*, 97 id. 105, 113; *Loos* v. *Wilkinson*, 110 id. 195, 209; *Prentiss* v. *Bowden*, 145 id. 342.)

When we consider the question of the validity of the general assignment, we find that the evidence renders it quite clear that, at the time of his suspension, the defendant Hall did not intend to make a general assignment for the benefit of his creditors, but believed that he could adjust his debts by distributing among his creditors all the property owned by him at excessive prices, and that he could borrow sufficient money to pay the remainder after his property had been so distributed. This course was industriously and effectively pursued by him until his creditors, by attachments issued and threatened, rendered an assignment practically necessary.

But it is said that when the inventory was filed, the property transferred to Hamlin as collateral security and property transferred to some of his other creditors as collateral and some other small items of property were omitted from the schedule, and, hence, the referee should have found that the general assignment was made with an intent to hinder, delay and defraud his creditors. The evidence discloses that the schedules were made by the assignee and

not by the assignor. It is true, however, that he was consulted in regard to making them. We do not think the act of the assignee in making the schedules in any way reflects upon the act of the defendant Hall in making the assignment. (*Denton* v. *Merrill*, 43 Hun, 224, 232.) The question here was as to the intent of the defendant Hall at the time the assignment was made. If his purpose was honest, the instrument was valid. (*Hardmann* v. *Bowen*, 39 N. Y. 200.) But the subsequent acts of the assignor were admissible to reflect light upon the original intent. (*Shultz* v. *Hoagland*, 85 N. Y. 464.) The most, therefore, that can be said in this case is that the omission of the assignor to correct the schedules made by the assignee, by inserting therein the property omitted, was a circumstance to be taken into consideration by the referee in determining the intent with which the assignment was made. If, as the referee found, the omission was not an intentional one, but was the result of forgetfulness or oversight on the part of the assignor, or if he supposed it unnecessary, then little weight was to be given to such omission, especially as all the facts relating to that property were known to the public, and had been testified to by Hall when examined under the Assignment Act, so that the actual situation must have been known to his creditors. As was said by FINCH, J., in the *Shultz* case: "It would be hard to find any schedules absolutely perfect, or any debtor who could inventory every item of his property with strict accuracy. Room must be allowed for honest mistake, and possibly even for careless and thoughtless error." (See, also, *Peyser* v. *Myers*, 135 N. Y. 599, and *Roberts & Co.* v. *Buckley*, 145 id. 215.)

It is also said that the transfers of property to pay a portion of his creditors, and of other portions of his property to secure other of his creditors, including the defendant Hamlin, his wife, his brother, the Chemung Canal Bank and Charles J. Langdon, were evidence that the assignment was made with an intent to defraud his creditors. Each of these transfers was a circumstance to be considered by the referee in determining this question of intent, and yet, when it is found that in each of those cases the defendant Hall was in fact indebted to the creditors secured, and that the property transferred as collateral for such debt was not greatly disproportionate to the debt sought to be secured, the referee might

well have been led to the conclusion that those circumstances were entitled to but little weight in determining the question of the intent with which such general assignment was made.

The appellant also contends that the exhibition by Hall of an incorrect list of his assets, his representations concerning it, and his threats to creditors, were evidence of an intent to defraud his creditors by the assignment which was subsequently made. It may be assumed, we think, that this was a circumstance which the learned referee was authorized to consider in determining that question, but it was neither controlling nor conclusive evidence of fraud.

Upon all the evidence in the case the referee has found that the general assignment made by the defendant Hall, and the transfers by him to the defendant Hamlin, were made in good faith for a valuable consideration, and without any intent to hinder, delay or defraud the creditors of the defendant Hall.

A patient and careful examination of the great volume of evidence contained in the appeal books in this case has led us to the conclusion that these findings of the referee are sustained by the evidence. The evidence in the case was conflicting, and it is quite possible that different inferences might have been drawn and different conclusions reached from the testimony of the witnesses and the transactions and circumstances developed by the evidence. This was clearly a case where the questions at issue were of fact for the referee, and the findings were not so plainly against the weight of evidence, nor did the proof so clearly preponderate in favor of a contrary result that it can be said with reasonable certainty that the referee erred in his conclusion. Where a review of the facts by an appellate tribunal is proper it is under no obligation to arbitrarily adopt the conclusions of the trial court; yet, great consideration will be accorded to its opinions, especially where there is evidence on both sides, and the mind of the court has been called upon to weigh conflicting statements and inferences, and to decide upon the credibility of opposing witnesses. In reviewing the determination of a trial court in such a case, the appellate court is not warranted in reversing upon the sole ground that, in its opinion, the trial court should have reached a different conclusion. To justify such a course, it should appear that the findings of the trial court

were against the weight of evidence, or the proof so clearly pre-ponderated in favor of a contrary result that it can be said with reasonable certainty that the trial court erred in its conclusion. (*Westerlo* v. *De Witt*, 36 N. Y. 340; *Crane* v. *Baudouine*, 55 id. 256; *Sherwood* v. *Hauser*, 94 id. 626; *Baird* v. *Mayor, etc., of City of N. Y.*, 96 id. 567; *Lowery* v. *Erskine*, 113 id. 52; *Devlin* v. *The Greenwich Savings Bank*, 125 id. 756; *Barnard* v. *Gantz*, 140 id. 249.)

We are of the opinion that under the doctrine of the authorities cited the findings of the referee should be upheld.

The appellant, however, contends that a former judgment in an action in which John R. Purtell and another were plaintiffs and Francis G. Hall and Samuel G. Taber were defendants, was a bar or conclusive evidence against the defendants Hall and Taber. That action was brought by the plaintiffs therein against the defendants for the sole purpose of setting aside the general assignment of Hall to the defendant Taber. The judgment adjudged the assignment to be fraudulent and void, and set it aside only as against the plaintiffs in that action. That action was by the plaintiffs therein alone, and not in behalf of other creditors. The plaintiff in this action was not a party to that action nor a privy of the plaintiff therein, and, hence, was in no way bound by the judgment. Indeed, he was not a creditor of Hall until March, 1889, when he purchased the judgment upon which he bases his right to maintain this action. We think the judgment in that action was not an estoppel or conclusive evidence against either of the defendants in this action, and the referee properly so held. (*Shipman* v. *Rollins*, 98 N. Y. 311, 330; *Moore* v. *City of Albany*, Id. 396, 409; *Masten* v. *Olcott*, 101 id. 152, 160; *Quinby* v. *Carhart*, 133 id. 579.)

While an examination of the requests to find proffered by the plaintiff and those proffered by the defendants shows that in some instances the learned referee has made findings upon such requests that are perhaps somewhat inconsistent, still, we find nothing in those findings which materially affects the questions at issue in the case, and, therefore, furnish no reason to disturb the judgment.

We have examined the various rulings to which our attention has been called by the appellant, but have discovered no error in them that would justify a reversal  Nor do we deem it necessary to dis-

cuss them further than to say that each of the rulings has been carefully examined and considered by us.

We are of the opinion that the findings of the referee in this case are fully sustained by the evidence; that no exceptions were taken which would justify a reversal, and that the judgment herein should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.